**HOPPER FURS, INC., Appellee,**

v.

**EMERY AIR FREIGHT CORPORATION,
Appellant.**

No. 83–2378.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1984.

Decided Dec. 13, 1984.

Rehearing Denied Jan. 8, 1985.

P. Terence Crebs (argued), Jeffrey J. Kalinowski, St. Louis, Mo., for appellant.

Robert J. Radice (argued), Daniel T. Rabbitt, St. Louis, Mo., for appellee.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Emery Air Freight Corporation appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri upon a jury verdict in an action for breach of contract and negligence brought by Hopper Furs, Inc. For reversal appellant argues that the district court erred in (1) denying its motion for a directed verdict at the close of all the evidence, (2) refusing to admit into evidence appellee's prior and abandoned pleadings and (3) refusing to permit cross-examination concerning appellee's insurance on the lost shipment. For the reasons discussed below, we modify the judgment of the district court and affirm as modified.

Appellee is a Missouri corporation engaged in the business of selling, repairing, storing, and servicing fur garments. Its national headquarters are located in St. Louis, Missouri. Appellant, a Delaware corporation, is an air-freight forwarder with its principal place of business in Connecticut.

This case deals with a shipment of furs, owned by appellee, which was lost by appellant during shipment. On March 30, 1982, appellant picked up a shipment of furs from appellee's chief of security, who filled in certain items on the air bill. In the box entitled "zip code," he placed the figure "61,045". The "zip code" box is immediately above the "declared value" box. Gerald Doane, on behalf of appellant, signed the air bill and took possession of the furs. Appellee retained a carbon copy of the air bill. The air bill provided in part:

2. The shipper agrees that carriage is subject to the TERMS AND CONDITIONS OF CONTRACT stated here and those terms and conditions in the Emery Service Guide in effect on the date of shipment which are incorporated by reference, and made a part of this contract . . . .

. . . .

4. LIMITATION OF LIABILITY. The liability of Emery is limited to the amount set forth in the Emery Service Guide in effect on the date of shipment unless a higher declared value is requested, and the fees set forth in the Emery Service Guide in effect on the date of shipment for such higher declared value are paid by the Shipper.

The Emery Service Guide in effect on the date of shipment provided in part:

LIMIT OF LIABILITY. The liability of Emery shall be limited to $10.00 per pound of $22.05 per kilogram of cargo damaged or lost plus the amount of Emery's transportation charges applicable to that part of the shipment damaged or lost, unless at the time the shipper tendered the shipment to Emery, the shipper made a declaration of value for carriage in excess of $10.00 per pound or $22.05 per kilogram in the space designated in Emery's Air Bill or shipper's letter of instruction for a declaration of value for carriage.

Appellee did not pay a higher fee based on a higher declared value or provide a letter of instruction to appellant.

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

Appellee brought suit in February 1983 and filed amended complaints in April and July of 1983. The second amended complaint contained four counts: (1) breach of contract because of appellant's failure to deliver the shipment, (2) breach of contract for failure to pay the value of the lost shipment, (3) negligence because of appellant's failure to provide adequate security and to keep a proper look-out to prevent theft or misplacement of the shipment, and (4) res ipsa loquitur negligence. Appellant's motion, at the close of all the evidence, for a directed verdict that its liability was limited to $2,150 and appellant's motion for judgment notwithstanding the verdict were denied. The district court submitted the case to the jury on a negligence theory. Judgment on the jury verdict was entered and damages of $61,045 were awarded to appellee. This appeal followed.

Appellant argues that the district court erred in denying its motion for a directed verdict because the undisputed evidence showed that the parties had entered into an express written contract limiting appellant's liability in the event of loss to $2,150.

The standard for granting a motion for a directed verdict is the same under federal and Missouri law. *Savage v. Christian Hospital Northwest*, 543 F.2d 44, 46 (8th Cir.1976). In considering a motion for a directed verdict, the trial judge must view all of the evidence in the light most favorable to the party opposing the motion. *Farner v. Paccar, Inc.*, 562 F.2d 518, 522 (8th Cir.1977), *Kennedy v. United States Construction Co.*, 545 F.2d 81, 82 (8th Cir.1976); *Shofler v. Jordan*, 284 S.W.2d 612, 613 (Mo.Ct.App.1955). If the evidence when viewed in this light is such that reasonable persons could not differ in finding that the movant should prevail, the court should grant the motion. *Moore v. Credit Information Corp.*, 673 F.2d 208, 210 (8th Cir.1982); *Farner v. Paccar, Inc.*, 562 F.2d at 522. For the reasons discussed below, we hold that the district court erred in denying appellant's motion for a directed verdict limiting liability to $2,150.

In determining that the district court should have directed a verdict, we considered first the issue of appellant's liability for the lost shipment. A common carrier is liable for any loss, damage or injury which the carrier causes to transported property. 49 U.S.C. § 20, para. (11) (1982). There are, however, several recognized exceptions to this general liability. A carrier is not responsible for damage caused by an act of God, the public enemy, the inherent nature of the property, the public authority, or the act or default of the shipper. *United States v. Mississippi Valley Barge Line*, 285 F.2d 381, 388 (8th Cir.1960). Evidence of non-delivery of a shipment establishes a prima facie case of carrier liability and the burden shifts to the carrier to rebut the presumption of liability. *Johnson v. Chicago, Milwaukee, St. Paul & Pacific R.R.*, 400 F.2d 968, 972 (9th Cir.1968).

In the present case there was uncontradicted evidence that appellant did not deliver the shipment to appellee's consignee. Appellant attempted to show that appellee's failure to declare a value and to contract for armed surveillance of the shipment was contributory negligence. Appellee, however, did not have a duty to declare a value on the shipment or to request armed surveillance and thus was not contributorily negligent. A shipper may elect to accept the valuation of the carrier or to declare a higher value, 49 U.S.C. § 20, para. (11). There was no other evidence produced by appellant which would relieve appellant of the liability for the loss of the shipment. Consequently, there was no factual issue of liability for the jury to decide and the district court should have directed a verdict for the plaintiff on the issue of liability. In addition, appellant's motion for a directed verdict limiting its liability to $2,150 implicitly conceded liability.

Having determined that the court should have directed a verdict on liability, we now examine the issue of damages. Appellant argues that the parties entered into an express written contract, which limited ap-

pellant's liability under either a contract or a negligence theory.

A common carrier may not exempt itself from liability for its negligence; however, a carrier may limit its liability. 49 U.S.C. § 20, para. (11); *Adams Express Co. v. Croninger*, 226 U.S. 491, 509–10, 33 S.Ct. 148, 153, 57 L.Ed. 314 (1913).

[W]here a contract ..., signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight [the carrier] receives.

*Hart v. Pennsylvania R.R.*, 112 U.S. 331, 343, 5 S.Ct. 151, 157, 28 L.Ed. 717 (1884). The Supreme Court in a later case held that the federal statute permitting limitation of carrier liability is "comprehensive enough to embrace all damage resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 30, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1931). The Sixth Circuit has specifically held that misdelivery constitutes a breach of the interstate contract of carriage and is governed by this federal statute. *American Synthetic Rubber Corp. v. Louisville & Nashville R.R.*, 422 F.2d 462, 466 (6th Cir.1970). The Third Circuit, in an action for negligent handling by a carrier, held that the "obligation of the carrier must be determined solely from the recitals of the written contract itself." *Thomas v. Trans World Airlines, Inc.*, 457 F.2d 1053, 1058 (3d Cir.1972). All actions against a common carrier, whether designated as tort or contract actions, are governed by the federal statute, and "no recovery can be had in excess of the amount permitted by [the] terms" of the contract. *Southeastern Express Co. v. Pastime Amusement Co.*, 299

U.S. at 30, 57 S.Ct. at 74. We therefore hold that damages for the loss of a shipment may not exceed the value of the shipment as specified in a contract existing between the parties. A shipper who brings a negligence action may not recover in excess of the amount specified in the receipt or bill of lading.

We turn now to the question whether a contract existed between appellant and appellee. In determining whether a contract existed, we apply the principles of contract law. *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129, 135 (4th Cir.1967).

Appellant argues that the air bill and the incorporated Emery Service Guide was an express written contract between the parties. Further, appellant argues that (1) the contract was unambiguous, (2) testimony concerning appellee's undisclosed intent to declare a value of $61,045 is inadmissible and incompetent under the Missouri parol evidence rule and (3) the contract may not be reformed or rescinded because of the unilateral mistake of appellee. Appellee argues that appellant, in reviewing the air bill, realized that the "61,045" was mistakenly placed in the "zip code" box instead of the "declared value" box; therefore, a declared value of $61,045 was part of the contract. Alternately, appellee argues that there was no contract because there was no meeting of the minds on the value of the shipment.

In order for a contract to be valid and enforceable, the essential terms must be certain. The terms must be sufficiently definite so as to enable a court to give them an exact meaning. *Shofler v. Jordan*, 284 S.W.2d at 614. The contract in the present case clearly specifies all essential terms: the parties, the duties of each under the contract, and the limits of liability for breach of the contract. *Id.* at 615. The absence of a declared value does not render the contract indefinite because the contract specifies a value in case of loss. Therefore, we hold that an express written contract existed between appellant and appellee.

■ The terms of a contract are to be determined by the expressed, not the secret, intent of the parties. *Longmire v. Diagraph-Bradley Stencil Machine Corp.*, 176 S.W.2d 635, 646 (Mo.Ct.App.1944). "If ... words or acts judged by a reasonable standard manifest an intention to agree in regard to a matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of ... mind on the subject." *Roper v. Clanton*, 258 S.W.2d 283, 289 (Mo.Ct. App.1953) (citations omitted). The intention of appellee to declare a higher value for the shipment was not disclosed to appellant and therefore is not a part of the contract.

The express written terms of a contract may not be modified by parol evidence unless the contract is ambiguous. "The parol evidence rule provides, essentially, that evidence of understandings and negotiations concerning a written instrument is inadmissible to vary, alter, or contradict the terms of the written instrument when that instrument is complete, unambiguous, and valid and there is no claim of fraud, accident or mistake with respect to the evidence." *Sullivan v. United States*, 363 F.2d 724, 727 (8th Cir.1966) (citations omitted), *cert. denied*, 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967).

Appellee argues that the contract does not contain an essential term (the declared value) and is ambiguous. These arguments are without merit. The air bill is not ambiguous or incomplete because a higher declared value is missing or because the number "61,045" is inserted in the "zip code" box. According to the evidence presented by appellant, the box for declared value is often left empty when the shipper accepts the lower value included in the air bill. We therefore hold that the contract was complete, integrated and unambiguous.

■ Appellee argues, however, that the contract was the product of a mistake and, consequently, may be modified by parol evidence. Parol evidence may modify a contract if the contract is the product of a mutual mistake.

> [W]hen no question of fraud, bad faith, or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, it is necessary that the mistake be mutual, and that both parties [understand] the contract as ... it ought to have been, and as in fact it was except for the mistake.

*Thomas v. Trans World Airlines, Inc.*, 457 F.2d at 1056 (citations omitted). Appellee's evidence in the present case was that appellee's security chief mistakenly placed "61,045" in the "zip code" box instead of the "declared value" box. There was no evidence that appellant was aware of this mistake other than appellee's assertion that appellant should have recognized the mistake. To the contrary, appellant did not charge a higher fee, which was appellant's policy when a higher value is declared. "A mistake by one party coupled with ignorance thereof by the other party does not constitute a mutual mistake." *Id.* at 1056. Appellee's mistake was unilateral and therefore may not be the basis for reformation of the contract.[2] We hold that the air bill was a valid written contract which limited appellant's liability for the lost shipment to $2,150.

Appellant also argues that the district court erred in refusing to admit into evidence appellee's prior and abandoned pleadings and in refusing to permit cross-examination concerning appellee's insurance on the lost shipment.[3] We do not decide these

**2.** We note that appellee's parol evidence should not have been considered even though appellant did not raise an objection. "The parol evidence rule is one of substantive law. It is not a rule of evidence. In a proper case for the application of rule, even if the parol evidence be received without objection, it must be ignored." *Commerce Trust v. Watts*, 360 Mo. 971, 231 S.W.2d 817, 820 (1950). Appellee's evidence of its secret intent to declare a higher value was therefore inadmissible to vary the terms of an unambiguous contract.

**3.** While not entirely relevant, we note that appellee was insured by Mission Insurance Company, which paid appellee the full benefit—$50,000—for the lost shipment. The policy grants the insured permission to accept the limited

issues because resolution of these issues would not affect our decision in this case.

We hold that the district court erred in denying appellant's motion for a directed verdict and in entering judgment in excess of the contract limitations. We therefore reduce the damage award from $61,045 to $2,150 and affirm the judgment as modified.

liability on receipts or bills of lading issued by     carriers.