**HUSMAN CONSTRUCTION COMPANY and Larry Husman, Appellants,**

v.

**PUROLATOR COURIER CORP. and Western Union Telegraph Company, Appellees.**

No. 87–5040.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1987.

Decided Oct. 22, 1987.

Michael J. Schaffer, Sioux Falls, S.D., for appellants.

Derald W. Wiehl, Sioux Falls, S.D., for appellees.

Before HEANEY, BOWMAN and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Husman Construction Company (Husman Co.) and Larry Husman (Husman) appeal from the order of the district court[1] granting summary judgment in favor of defendants Purolator Courier Corp. (Purolator) and Western Union Telegraph Company (Western Union). We affirm.

On March 11, 1985, Husman, owner of Husman Co., brought a sealed construction bid to the Sioux Falls, South Dakota, office of Purolator for delivery to the General Services Administration (GSA) offices in Denver, Colorado. The bid concerned the remodeling of the United States Bankruptcy Court facilities in Sioux Falls. The GSA had announced that it would not consider any bid received after 1:30 p.m. on March 12, 1985, in awarding the contract. Purolator agreed to deliver Husman's bid to the GSA before 12:00 noon on March 12, 1985. On the morning of March 12, Husman employed Western Union to send a bid modification to the GSA. Western Union agreed to transmit the bid modification before bidding was closed that afternoon. Neither the base bid, which was delayed by an airplane malfunction, nor the bid modification arrived on time, both being approximately one or one and one-half hours late. As a result, Husman's bid, which apparently would have been the winning bid, was not considered. Husman thereafter sued Purolator and Western Union for the profits that he would have realized had his bid and bid modification been delivered timely.

When Husman engaged Purolator to deliver the bid, he filled out a bill of lading. On the face of that document, immediately adjacent to the spaces in which Husman wrote in the recipient's name and address, and in a typeface identical to the typeface used to designate on which lines to write the recipient's name and address, Purolator had printed the following disclaimers:

> Sender agrees that unless a greater value for carriage is declared, Purolator's liability for loss, damage, or non-delivery shall be limited to the actual value of the shipment or two hundred fifty dollars ($250.00), whichever is less.

> Purolator will not be liable for special, incidental or consequential damages.

Additionally, the face of the bill of lading directed the shipper to read the reverse side of the sender's copy, which copy Husman received and retained and which reads in part as follows:

> LIMITATION OF LIABILITY—Purolator's liability is limited as specified in its Worldwide Directory, or applicable tariff. PUROLATOR'S LIABILITY FOR THE LOSS, DAMAGE OR NON–DELIVERY OF A SHIPMENT SHALL BE LIMITED TO THE ACTUAL VALUE OF THE SHIPMENT OR THE DECLARED VALUE OF THE SHIPMENT, whichever is less. Unless a higher value is declared on the bill of lading or other applicable shipping document, each shipment will be deemed to have a maximum declared value of $250.00. If a value greater than $250.00 is declared, an excess declared value charge will be assessed at a rate of $.50 per $100.00 of excess declared value.

> \* \* \* \* \* \*

> NOTWITHSTANDING THE FOREGOING, PUROLATOR IN NO EVENT

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

SHALL BE LIABLE FOR ANY CONSE-QUENTIAL, INCIDENTAL OR SPE-CIAL DAMAGES WHICH MAY ARISE FROM LOSS, DAMAGE, NON–DELIV-ERY OR DELAY OF ANY SHIPMENT. THIS LIMITATION SHALL APPLY TO AND INCLUDE, BUT NOT BE LIMIT-ED TO DAMAGES FOR LOSS OF PROFIT, LOSS OF INCOME OR A LOSS OF BARGAIN.

\* \* \* \* \* \*

Purolator's liability for delay in delivery of any shipment shall be limited to the value of the transportation charges for such shipment.[2] Due to the nature of the business, Purolator will not be liable, except as provided herein, for failure to deliver by a stipulated time or date.

\* \* \* \* \* \*

FOR ALL CURRENT RULES, REGU-LATIONS AND RATES, SEE PUROLA-TOR'S WORLDWIDE DIRECTORY, IF APPLICABLE, ITS TARIFF [sic] AVAILABLE FROM ALL PUROLATOR OFFICES.

In addition, on the back of the last page of the three-page bill of lading packet, directly under the instructions for completing the form, the shipper is put on notice for the third time that Purolator's liability is limited.

Husman does not dispute that Purolator maintains a copy of the above-mentioned Worldwide Directory, to which he was referred by the bill of lading, at its Sioux Falls office. The relevant portion of the Worldwide Directory, titled "Terms & Conditions of Carriage," provides in part as follows:

BIDS

If the shipment involves a bid or other similar extremely time-sensitive material, the loss or delay of which might result in consequential, incidental or special damages. [sic] Purolator Courier will accept such shipments, but subject to the limitations contained herein. The shipper should prominently identify such shipment as a bid or similar document and call Purolator Courier's attention to the special nature of the shipment. In view of Purolator Courier's limitation on consequential damages, the shipper is advised to contact its own insurance broker, agent or company to obtain coverage against such risk.

■ At federal common law, in the absence of evidence of unconscionability, a carrier may limit its liability for actual damages resulting from its negligence. *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984) ("[a] shipper who brings a negligence action may not recover in excess of the amount specified in the receipt or bill of lading"); *First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1116 (3d Cir.1984) (citing *Hart v. Pennsylvania R.R.*, 112 U.S. 331, 337–38, 5 S.Ct. 151, 153–54, 28 L.Ed. 717 (1884)); see also U.C.C. § 7–309(2) (1978). This has been the law before, during (although only within then effective guidelines), and after airline regulation. *First Pennsylvania Bank*, 731 F.2d at 1116–22. Now that airlines are again deregulated, the carrier's limitation of liability usually is found in the bill of lading, which serves as the contract between the carrier and the shipper. *Hopper Furs*, 749 F.2d at 1264–65.

■ In order for a limitation of liability to be valid under the "released value doctrine," the carrier must present the shipper with a reasonable opportunity to declare a value for the shipment above the maximum value set by the carrier, pay an additional fee, and thereby be insured at a higher rate should the shipment go awry. *First Pennsylvania Bank*, 731 F.2d at 1122; *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1315 (9th Cir.1977). It is not necessary that an employee of the carrier explain the option to declare a higher value to the shipper. *First Pennsylvania Bank*, 731 F.2d at 1115. Rather, the carrier must provide only reasonable notice of the opportunity to declare a higher value. *Klicker*, 563 F.2d at 1315.

■ The face of Purolator's bill of lading puts the shipper on notice that "unless a

---

**2.** Purolator has refunded the transportation charge.

greater value for carriage is declared," Purolator's liability will be limited to $250 or the actual value of the shipment, whichever is less. Additionally, the face of the bill provides spaces for the shipper to write in a description of the item being shipped and its declared value. Finally, the instructions for completing the bill of lading on the back of the small packet tells the customer to fill in the description and declared value of each package. Husman was not refused a reasonable opportunity to declare a higher value; he simply made no attempt to do so.

Nevertheless, Husman argues that if he had tried to declare a higher value, he would have been refused because bids have no intrinsic value. Husman bases this speculation on his reading of the section on bids in Purolator's Worldwide Directory. However, that section merely states that Purolator will accept bids for shipment "subject to the limitations contained herein," namely, that if a shipper wishes to recover more than $250 for an improper delivery, the shipper must pay a higher fee.[3]

■ Additionally, the purpose of the released value doctrine is to allow shippers to pay a higher rate of carriage to insure against their possible actual damages should the item being shipped be lost or destroyed. *See First Pennsylvania Bank,* 731 F.2d at 1122; *Klicker,* 563 F.2d at 1315. Husman makes no claim for actual damages, but instead seeks consequential damages in the form of lost profits. Any challenge to Purolator's limitation of liability under the released value doctrine could not serve to invalidate the contract between Husman and Purolator on the issue of consequential damages.

By his own admission, Husman was an experienced bidder who had used Purolator several times to deliver previous bids. However, despite this experience, and despite the warning in the Worldwide Direc-

tory, Husman chose not to obtain independent insurance coverage, even though he was sending his bid only one day before it was due. Nor did Husman pursue an alternative method of sending the bid, such as certified or registered mail, either of which guarantees that a bid will be considered even if it arrives late, so long as it is postmarked five days before bidding closes. *See* 48 C.F.R. 14.304–1(a)(1) (1985).

Instead, ignoring the clear and valid limitations of liability in the contract he signed, Husman brought this suit in district court. No relief will be forthcoming. Those using delivery services to transmit bids are in the best position to procure insurance for their time-sensitive cargo or to otherwise proceed at their own risk. It is unreasonable to subject a carrier to liability for enormous and unforseeable consequential damages in return for an $11.75 shipment fee. *See* J. Calamari & J. Perillo, *Contracts* § 14–6, at 598 (3d ed. 1987). As succinctly stated by the Third Circuit in denying relief to a shipper under similar circumstances: "They made a business judgment when they decided not to explore the possibility of obtaining greater protection from the airline at a higher rate, or even of taking out a policy themselves with an insurance company to cover their exposure. Having made their bed they must lie in it." *First Pennsylvania Bank,* 731 F.2d at 1122.

■ As to Western Union, summary judgment must also be affirmed. The late arrival of the base bid rendered irrelevant the late arrival of the bid modification. Regardless of when the modification arrived, Husman Co. would not have been considered for the courthouse remodeling project because the base bid was received late. (Affidavit of Charles Leedholm, contracting officer for the GSA, ¶ 15.) Therefore, as a matter of law Western Union's failure to perform cannot be said to be a proximate cause of Husman's injury. *Re-*

---

**3.** The district court summarily concluded that a bid, prior to the bid letting, has no actual value. Without deciding this issue, the district court's conclusion seems logically correct: a bid, prior to being declared the winning bid (should it win), can have only potential or contingent in-

trinsic value. However, even assuming that this reasoning is correct, and further assuming that Purolator would have adopted this reasoning, Husman's argument that he was therefore refused a reasonable opportunity to declare a higher value is without merit.

*statement (Second) of Torts,* § 432(1) (1965) (*Restatement*) (an actor's negligence "is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent").

Contrary to Husman's protestations, this holding does not create a "Catch–22" situation in which both Purolator and Western Union can escape liability by pointing to the other's failure to perform. Common sense dictates that a base bid must be in place before a bid modification and not vice-versa, even if this does amount to a fiction. Purolator had a duty to perform "first," and if it failed to do so, then Western Union's actions would be, in all cases, irrelevant. Purolator could not argue, as Western Union can, that its failure to perform would be irrelevant in all cases if the modification was late. Therefore, this case is not analogous to the illustration of a joint tort in which two fires, either one of which would have destroyed the victim's property, join to burn down the property. *See Restatement,* § 432(2), illustration 3. In effect, Husman's property was already burned to the ground at the time of Western Union's failure to perform.

As Husman failed to show a *"genuine* issue of *material* fact" with regard to the liability of Western Union, or Purolator, summary judgment was properly granted. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis retained); Fed.R.Civ.P. 56(c).

The order of the district court granting summary judgment in favor of defendants is affirmed.