996 F.2d 1315
 HILL CONSTRUCTION CORPORATION, D/B/A Hill Helicopters Rental
Service, Plaintiff, Appellee,
v.
AMERICAN AIRLINES, INC., Defendant, Appellant.
HILL CONSTRUCTION CORPORATION, D/B/A Hill Helicopters Rental
Service, Plaintiff, Appellant,
v.
AMERICAN AIRLINES, INC., Defendant, Appellee.
 Nos. 92-1903, 92-1992.
 United States Court of Appeals,
First Circuit.
 Heard March 1, 1993.
Decided June 29, 1993.
 
 Ricardo F. Casellas with whom Jacqueline D. Novas and Fiddler, Gonzalez & Rodriguez, San Juan, PR, were on brief, for American Airlines, Inc.
 Jose E. Alfaro Delgado with whom Calvesbert & Brown, San Juan, PR, was on brief, for Hill Const. Corp.
 Before BREYER, Chief Judge, TORRUELLA* and SELYA, Circuit Judges.
 BREYER, Chief Judge.
 
 
 1
 American Airlines appeals a judgment requiring it to pay approximately $22,000 to Hill Construction Corporation as a result of American's having temporarily lost, and then damaged, a helicopter blade that Hill had asked American to ship from Puerto Rico to California. American does not contest the fact of liability. Rather, it argues that the court lacked the power to award damages greater than the maximum permissible under a contract provision limiting American's liability for cargo "lost, damaged or delayed" to $9.07 per pound (a total of $1,814 in this case). The district court found that the "liability limitation" did not apply. In our view, however, the limitation is valid and applicable. And, well-established legal principles require us to reverse the district court's determination.
 
 
 2
 * Background
 
 
 3
 The record, read favorably to Hill, shows the following:
 
 
 4
 1) On August 10, 1990, a Hill Construction employee brought a helicopter blade to American Airlines' cargo terminal in San Juan, Puerto Rico, and signed (on Hill's behalf) an American "air waybill"--a contract that obliged American, in return for payment, to ship the blade to California.
 
 
 5
 2) The air waybill said on its face that provisions on its "reverse side" would "limit" American's "liability for loss, damage, or delay in certain instances." The reverse side said, among other things, that American's liability for cargo "lost, damaged, or delayed" was limited to $9.07 per pound (plus transportation charges) unless the shipper declared a higher value and paid an additional charge. Hill's employee did not fill in the "declared value" box on the front of the bill, nor did the employee, in any other way, declare a higher value, nor did the employee pay any additional charge.
 
 
 6
 3) American accepted the blade for carriage and promptly lost the blade.
 
 
 7
 4) About seven months later, in March 1991, in a San Juan air cargo warehouse near the sea, American found a crate containing what it thought was the missing blade. It contacted Hill's "administrator," Ms. Dorothy Hill, who came to the warehouse. An American employee (contrary to Ms. Hill's advice) began to open the crate with a forklift. Inside, Ms. Hill found the missing blade, seriously damaged both by the forklift and by the salty sea air.
 
 
 8
 After these events, Hill Construction brought this lawsuit against American. After a trial, the district court found American "negligent in the handling of plaintiff's cargo." It decided that the liability limitation either was invalid or, alternatively, did not apply to so serious a violation of the transportation contract. And, it consequently awarded full compensatory damages of almost $22,000, the value of the blade. American now appeals this damage award.
 
 II
 The Law
 
 9
 Where air carriage contracts set forth limitations on carrier cargo liability in a "reasonably communicative" form and offer the shipper a choice of paying a higher rate for greater protection, federal courts have normally found those limitations lawful. See (1) post-deregulation air carrier cases, e.g., Deiro v. American Airlines, Inc., 816 F.2d 1360, 1364-65 (9th Cir.1987); Husman Constr. Co. v. Purolator Courier Corp., 832 F.2d 459, 461 (8th Cir.1987); Arkwright-Boston Mfrs. Mutual Ins. Co. v. Great Western Airlines, Inc., 767 F.2d 425, 426-27 (8th Cir.1985); First Pennsylvania Bank v. Eastern Airlines, Inc., 731 F.2d 1113, 1115, 1122 (3d Cir.1984); Reece v. Delta Airlines, Inc., 731 F.Supp. 1131, 1134 (D.Me.1990); Neal v. Republic Airlines, Inc., 605 F.Supp. 1145, 1148-49 (N.D.Ill.1985); see also Saul Sorkin, 2 Goods in Transit [hereinafter, Goods in Transit ] § 13.07 at 13-79-82 & n. 11, § 13.07[b] at 13-90 & n. 48 (1976 & Supp.1990) and cases cited therein (noting continued enforcement of liability limitations despite deregulation of air carriers); (2) regulated carrier cases, e.g., American Cyanamid Co. v. New Penn Motor Express, Inc., 979 F.2d 310, 313, 316 (3d Cir.1992); Hughes Aircraft Co. v. North American Van Lines, Inc., 970 F.2d 609, 611-13 (9th Cir.1992); Co-Operative Shippers, Inc. v. Atchison, Topeka & Santa Fe Ry. Co., 840 F.2d 447, 451-52 (7th Cir.1988); Polyplastics, Inc. v. Transconex, Inc., 827 F.2d 859 (1st Cir.1987); Anton v. Greyhound Van Lines, 591 F.2d 103 (1st Cir.1978); National Motor Freight Traffic Ass'n, Inc. v. Interstate Commerce Comm'n, 590 F.2d 1180 (D.C.Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979); North American Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 232 (2d Cir.1978); Dassin v. Eastern Airlines, 501 F.2d 74 (9th Cir.1974), cert. denied, 419 U.S. 1121, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); Thomas v. Trans World Airlines, 457 F.2d 1053 (3d Cir.1972); Quasar Co. v. Atchison, Topeka & Santa Fe Ry. Co., 632 F.Supp. 1106, 1111-13 (N.D.Ill.1986); cf. (3) statutes allowing limitations on liability, e.g., 46 U.S.C.App. § 1304(5) (carriage of goods at sea); 49 U.S.C. §§ 10505(e) (rail carriers), 10730(b)(1) (motor transport), 11707(c)(4) (common carriers).
 
 
 10
 In a commercial context, liability limitations have certain advantages. They permit a carrier to avoid unforeseeably high liability for especially valuable cargo; they permit shippers of ordinary items to pay somewhat lower freight bills; and they permit shippers of valuable items to choose between paying an insurance premium to the carrier and obtaining, perhaps less expensive, insurance on their own. See Husman Constr. Co., 832 F.2d at 462; cf. Alan Schwartz & Robert E. Scott, Commercial Transactions 122-23 (1991). On the other hand, such clauses risk unfairness, where, for example, a shipper is, in fact, unaware of the limitation and his choices. Yet, the requirements of reasonably communicative notice and an opportunity to buy increased coverage for a premium payment lessen the risk of unfairness. And, as we have said, balancing advantages and disadvantages, both Congress and the courts have approved the use of such clauses.
 
 
 11
 The contract before us contains typical, standard form clauses which reasonably communicate the limitation on liability. The reverse side of the "air waybill" contains a series of clauses setting forth transport conditions, written in ordinary sized print and separated by spacing. On the copy submitted at trial, these clauses are fairly easy to read (except for the blurring of a few non-critical words that may reflect poor duplication). The clauses make clear that the carrier limits its liability for cargo that is "lost, damaged or delayed" to $9.07 per pound, but that the shipper may avoid the limitation by declaring a higher value and paying a greater charge. The front side of the bill clearly refers the reader to the back of the bill, for it says, in ordinary sized type, set forth clearly and separately from other words on the page:
 
 
 12
 This nonnegotiable airbill is a contract governed by Law and by the provisions on the reverse side. Such provisions, among other things, exclude or limit the Carrier's liability for loss, damage or delay in certain circumstances.
 
 
 13
 The front side of the bill also contains a box captioned "declared value," which, in this case, was left blank. Cf. Federal Express v. Paris Business Forms, Inc., 46 Pa.D. & C.3d 262 (1988) (standard provisions clearly printed on front and reverse of airbill afforded sufficient opportunity to declare higher value).
 
 
 14
 Ms. Hill testified that American's agent did not tell either her or her employee about the liability limitation clauses, and that, in fact, neither she, nor her employee, knew about such clauses. But, we do not believe that, in these factual circumstances, American was obliged to call the liability limitation to its customers' attention orally. The context is commercial. Hill Construction had been in business in Puerto Rico for eighteen years. Its employees had previously shipped helicopter parts from Puerto Rico to the mainland. In this context, a reasonably prominent writing, not in particularly small print, set forth with reasonable clarity on the front of a printed airbill, would seem sufficient to communicate the liability limitation, or at least to impose upon the commercial customer a further obligation to read (rather than to impose upon the carrier a further obligation to point to) what is written. See Husman Constr. Co., 832 F.2d at 461 (citing First Pennsylvania Bank, 731 F.2d at 1115); cf. Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261, 1264 (8th Cir.1984).
 
 
 15
 The carrier also has fulfilled its obligation to offer a further "insurance" option. The contract makes clear that the carrier can declare a higher value and buy full coverage for an additional fee. Hill has offered no evidence to suggest that the amount of this fee for additional cargo protection was unreasonable for an air carrier in American's market.
 
 
 16
 This valid liability limitation applies in the present situation. The provisions refer to cargo that is "lost, damaged or delayed," and the circumstances here fall within this language. The clause is enforceable despite the fact that American may never have put the blade on an airplane. A remedial contract clause, such as this one, is designed to take effect precisely where, as here, the carrier has broken the basic carriage contract. As Judge Kaufman pointed out more than forty years ago,
 
 
 17
 Only in case of a misdelivery, negligent injury, loss or similar misfortune does a valuation clause come into use. Hence the Federal courts have rightly held that the limitation of liability clause is designed for and does survive a breach of the contract of carriage.
 
 
 18
 Lichten v. Eastern Air Lines, Inc., 87 F.Supp. 691, 697 (S.D.N.Y.1949). Compare Restatement (Second) of Contracts § 237 (breach discharges other party's duties under contract) with, e.g., American Cyanamid Co., 979 F.2d at 316 (citing Quasar Co., 632 F.Supp. at 1108 (breach does not invalidate liability-limiting remedial provision designed to govern consequences of breach)).
 
 
 19
 Hill argues that a Ninth Circuit case, Coughlin v. Trans World Airlines, Inc., 847 F.2d 1432 (9th Cir.1988), is to the contrary, but Coughlin involved rather special circumstances. A special contract provision gave a passenger the right to carry valuables in the airplane cabin; the airline refused to allow a widow to carry her husband's ashes in the cabin; the airline lost the ashes; and the court (in a brief per curiam opinion) held inapplicable a provision limiting the airline's liability for loss of valuables. Unlike this case, the Coughlin contract involved a separate, liability-limitation-related contractual promise, namely a promise that the passenger might personally monitor the safety of the valuables by carrying them in the cabin. One might read the liability limitation as conditioned on fulfillment of that promise. See 2 Goods in Transit § 13.07 at 13-90 & n. 49. Then, since the carrier did not permit the passenger to carry the ashes, it failed to satisfy the condition, and the liability limitation did not take effect. See id. at 1433. We do not see how otherwise, consistent with prior authority, to read this case. See, e.g., Pinion v. Dow Chemical, 928 F.2d 1522, 1536 (11th Cir.) (case should be read as consistent with prior precedent if possible), cert. denied, --- U.S. ----, 112 S.Ct. 438, 116 L.Ed.2d 457 (1991). And, as so read, the case provides no support for Hill's claim here, where there is no relevant special, liability-limitation-related condition that the carrier failed to fulfill. As we have just pointed out, the contract here does not condition the liability limitation upon the carrier's satisfying its basic, general promise to transport the goods, for the parties normally intend a liability limitation to apply, not to disappear, when this type of general promise is breached. See p. 1318, supra.
 
 
 20
 Hill makes one further argument. It points to a legal doctrine, called the "deviation doctrine," which originated in maritime law. Applying that doctrine, courts would hold liability limitations inapplicable when ships departed significantly from prearranged routes that they had promised to take. See 2 Goods in Transit § 13.13 at 13-140-42 and cases cited therein. Hill has found two state cases, construing federal law, which applied this doctrine outside the maritime context, where the carrier acted so as "fundamentally" to change the foreseeable risks to the cargo. See, e.g., Information Control Corp. v. United Airlines Corp., 73 Cal.App.3d 630, 140 Cal.Rptr. 877 (1977); Philco Corp. v. Flying Tiger Line, Inc., 18 Mich.App. 206, 171 N.W.2d 16 (1969). But see Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty § 3-42 at 182 (2d ed. 1975) ("deviation doctrine" limited to geographic departures). Given American's seriously negligent conduct, says Hill, those state cases require us to invoke the "deviation doctrine" to set aside the liability limitation here.
 
 
 21
 We do not believe, however, that these cases require the result for which Hill argues. In each of the state cases, the carrier made a special, separate promise to the shipper about special conditions of carriage designed to lessen the risk of harm to the shipper's particular cargo. In the first case, United Airlines promised Information Control Corporation (and later specially confirmed in a telephone conversation) that it would place Information Control's computers on a specific flight and fly without stopovers. See Information Control, 73 Cal.App.3d at 632-33, 140 Cal.Rptr. 877. In the second case, Flying Tiger specifically promised Philco that it would store its computer materials upright. See Philco Corp., 171 N.W.2d at 17-18. We suspect that, as in Coughlin, the state courts saw failure to live up to these separate, risk-related promises (special to the particular shipment at issue) as a "fundamental" departure from conditions precedent to the "boilerplate" liability limitation's taking effect. See Restatement (Second) of Contracts § 203(c) & cmt. e (specific provisions or later additions supersede more general contract language); Baloise Ins. Co. v. United Airlines, 723 F.Supp. 195, 199 (S.D.N.Y.1989) (distinguishing Information Control where carrier was under no obligation to follow specific route).
 
 
 22
 In the case before us there was no breach of a special transport promise. Nor was there any "deviation" from the kind of thing one might expect to find when a carrier has "lost, damaged, or delayed" cargo. The record does not provide adequate basis for a court's finding transportation-related circumstances that fell outside the range of those in which the parties intended the liability limitation to apply. See, e.g., American Cyanamid, 979 F.2d at 315 (citing Deiro, 816 F.2d at 1366 (liability limitation valid "regardless of the degree of the carrier's negligence")); Coughlin, 847 F.2d at 1433; C.A. La Seguridad v. Delta Steamship Lines, 721 F.2d 322, 325 (11th Cir.1983) (limitation valid where cargo never delivered); Hellyer v. Nippon Yesen Kaisya, 130 F.Supp. 209, 210-11 (S.D.N.Y.1955) (same); Rockwell Int'l Corp. v. M/V Incotrans Spirit, 707 F.Supp. 272, 273 (S.D.Tex.1989) (limitation valid where damage occurred in warehouse); Neal, 605 F.Supp. at 1149 & n. 3 (suggesting limitation valid even in case of willful misconduct); Schiff v. Emery Air Freight Corp., 332 F.Supp. 1057, 1059 (D.Mass.1971) (distinguishing Philco to uphold limitation where no intentional wrong shown); cf. Rocky Ford Moving Vans, Inc. v. United States, 501 F.2d 1369, 1372 (8th Cir.1974) (refusing to apply deviation doctrine outside maritime law).
 
 
 23
 These federal rulings apply even though the negligence here was serious, for (as these cases show) in the absence of some special indication, courts will not impute to commercial parties (agreeing to a liability limitation) an intent to litigate the degree to which loss-causing negligence was ordinary, gross, or egregious. We add that we have found a case that suggests, in dicta, that the willful nature of misconduct might make a difference. Glickfeld v. Howard Van Lines, Inc., 213 F.2d 723, 727 (9th Cir.1954); cf. Schiff, 332 F.Supp. at 1059. But, we need not decide whether or not we agree with that dicta for, in this case, there is no showing of willfulness.
 
 
 24
 For these reasons, the district court's determination that the liability limitation was inapplicable in this case is reversed. The judgment is vacated and the case is remanded for further proceedings consistent with this opinion. (Our disposition of the case makes it unnecessary to consider Hill's cross-appeal.)
 
 
 25
 So ordered.
 
 
 
 *
 Judge Torruella heard oral argument in this matter, and participated in the semble but, after deciding that he should recuse himself, he did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d)