111 F.3d 138
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ESPRIT de CORP., Plaintiff-Appellant,
v.
VICTORY EXPRESS, INC., Defendant-Appellee.
 No. 95-16887.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1996.
Decided April 17, 1997.
 
 1
 Before: NORRIS and KOZINSKI, Circuit Judges, and MOLLOY,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff Esprit de Corp. appeals from a summary judgment in favor of defendant Victory Express. We affirm summary judgment for Victory on the Carmack Amendment claim and third-party beneficiary theory of breach of contract, and reverse and remand on the negligence claim.
 
 I. Carmack Amendment
 
 4
 The Carmack Amendment, 49 U.S.C. § 11707[1] holds a "common carrier" liable for loss or injury to goods incurred during transport, regardless of the lack of contractual privity. See Ensco, Inc. v. Weicker Transfer & Storage Co., 689 F.2d 921, 924-25 (10th Cir.1982) (carrier must be acting as common carrier to be liable under Carmack Amendment). In denying Esprit's motion to reconsider summary judgment in favor of Victory, the district court held that Esprit could not sue Victory under the Carmack Amendment because Victory was acting as a "contract carrier," not as a "common carrier," when it transported Esprit's goods. DC Denial of Motion for Reconsideration (DC Recons.) at 4. The district court based its conclusion solely on the existence of a contract--not on the terms of the contract--between Victory and FTT. DC Recons. at 2-4. On appeal, Esprit argues that the mere existence of a contract between FTT and Victory is not sufficient to establish that Victory was acting as a contract carrier.[2] Victory argues that it was acting as a contract carrier because the relationships between Esprit and FTT, and between FTT and Victory, were governed by contracts, whereas common carrier relationships are governed by ICC-filed rule tariffs or rate tariffs. Victory also argues that its contract with FTT satisfied the requirements set forth in the regulations, 49 C.F.R. § 1053.1, for creating an agreement for contract carriage.[3]
 
 
 5
 We review summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Whether a carrier meets the statutory and regulatory requirements to act as a contract carrier or a common carrier is a question of fact. Hargrave v. Freight Distribution Service, Inc., 53 F.3d 1019, 1023 (9th Cir.1995). Since we believe that Esprit has not presented specific facts sufficient to create a genuine issue of material fact regarding Victory's status, we affirm summary judgment in favor of Victory.
 
 
 6
 The parties do not dispute the terms of the written contract between FTT and Victory. The contract has a one-year term, to be renewed automatically from year to year until terminated by either party. The contract requires a minimum of one truckload shipment per year, and sets forth rates and charges for Victory's services, arranged in a table according to destination and cents per mile. The contract also provides that "services shall be bound by the same rules, regulations and laws that are applicable to common carrier [sic] under ICC regulations unless more specifically agreed upon," and that FTT would supply a "Standard Bill of Lading" to Victory on each shipment. An affidavit from Victory's customer service manager states that Victory hauled over 900 truckload shipments for FTT from October 1990 to July 1993, and that Victory does not have published tariffs with the ICC for less-than-truckload shipments--the type of shipment tendered from Esprit to FTT for consolidation. Supp. ER at Tab E. The parties do not dispute that the rates charged by Victory were less than the filed tariff rates of other trucking companies. Supp. ER at Tab C.
 
 
 7
 Based on these facts, Victory has made a showing that it was not acting as a common carrier, but as a contract carrier instead. In order for Victory to show that it was acting as a contract carrier, Victory must demonstrate that it had a "continuing agreement" with FTT that met FTT's "distinct needs." 49 U.S.C. § 10102(16)(B). The FTT/Victory contract constitutes a "continuing agreement" for contract carriage service, because even though its terms require only a one-year commitment for one truckload shipment, the course of dealing between the parties indicates that Victory actually transported hundreds of shipments for FTT over the course of several years. See Trans-Allied Audit Co. v. ICC, 33 F.3d 1024, 1031-32 (8th Cir.1994) (substantial evidence existed to support ICC conclusion that there was a "continuing agreement" where term of agreement was one year to be renewed automatically and parties' course of dealing showed continuing series of shipments over almost 3 years). Moreover, in support of the "distinct needs" prong, Victory presents evidence that it charged rates set forth in tables appended to the contract and determined by cents per mile, instead of rates dictated by filed tariffs.
 
 
 8
 Since Victory has made a sufficient showing, the burden shifts to Esprit to point to specific facts demonstrating that there is a genuine issue whether Victory was acting as a common carrier. To meet its burden, Esprit simply argues in the negative: that the existence of a contract does not mean that Victory was not acting as a common carrier. Moreover, Esprit points to a provision in the FTT/Victory contract that provides that "services shall be bound by the same rules, regulations and laws that are applicable to common carriers." Esprit is correct that the simple signing of a contract is not dispositive of the issue whether Victory acted as a contract carrier or common carrier, and the district court erred on this point. Hughes Aircraft v. North American Van Lines, 970 F.2d 609, 613 (9th Cir.1992) ("The fact that [a carrier] signed a contract to ship ... goods does not remove its common carrier status."). However, Esprit offers no affirmative evidence of Victory's common carrier status. The Interstate Commerce Act defines a "motor common carrier" as "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(15). The single clause in the FTT/Victory contract shows only that Victory contracted with FTT to follow certain rules applicable to common carriers. It does not show that Victory possessed any of the attributes of a common carrier, nor that Victory was, in fact, acting as a common carrier when it transported Esprit's goods.[4] Thus, even viewing the evidence in the light most favorable to Esprit, Esprit has not met its burden of showing a genuine issue for trial.
 
 
 9
 Victory also argues that it is not a common carrier in relation to Esprit because it has no contractual relationship with Esprit. However, this argument fails because Victory's status as a common or contract carrier is defined by Victory's relationship to FTT, not to Esprit. See Trans-Allied, 33 F.3d at 1024 (determining whether carrier was contract carrier or common carrier, based on nature of relationship between carrier and broker). Victory's reasoning would negate all suits under the Carmack Amendment where an intermediary is involved, and therefore contradicts Victory's concession that the Carmack Amendment allows suits by a shipper against a carrier when the shipper utilizes an intermediary.
 
 II. State Law Claims
 
 10
 Since the Carmack Amendment does not apply, we must address whether Esprit can sue Victory directly for negligence or breach of contract under California law. The district court held that Esprit could not sue Victory for breach of contract or negligence because Esprit had no contractual privity with Victory. DC Order at 2-3. The district court also held that Esprit could not sue Victory as an intended third-party beneficiary to the contract between FTT and Victory because the FTT/Victory contract was created before Esprit contracted with FTT. DC Order at 3-4.
 
 Negligence
 
 11
 Esprit argues that it may sue Victory in tort even in the absence of contractual privity. Victory claims that the Esprit/FTT and FTT/Victory contracts established an intent by the parties to require privity, and that contract remedies preclude damages based on negligence. We agree with Esprit.
 
 
 12
 A negligence cause of action turns on questions of duty, not on questions of privity. See Meighan v. Shore, 40 Cal.Rptr.2d 744, 752 (Ct.App.1995). The cases cited by Victory to support its position that privity may control even in a negligence action are inapposite. See Reider v. Thompson, 339 U.S. 113, 117-119 (1950); F.J. McCarty Co. v. Southern Pacific Co., 428 F.2d 690, 692 (9th Cir.1970). Those cases are not on point because they involve only the issue of whether a shipment of goods falls under the Carmack Amendment when one contract governs transportation of the goods between two points in the United States, while a separate contract governs transportation to or from a foreign country. Neither case addresses a claim of negligence. Moreover, the cases stating that a contract remedy precludes damages based on a carrier's negligence have no bearing on whether a plaintiff who has no contract may state a claim for negligence. See, e.g., Deiro v. American Airlines, 816 F.2d 1360, 1366 (9th Cir.1987); Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261, 1264 (8th Cir.1984); Glickfeld v. Howard Van Lines, 213 F.2d 723, 727 (9th Cir.1954).
 
 Third-Party Beneficiary
 
 13
 Esprit argues that it can sue Victory for breach of contract as the third-party beneficiary of the FTT/Victory contract. Under California law, a person may sue to enforce a contract as a third-party beneficiary if the parties to the contract "intended to benefit the third party and the terms of the contract make that intent evident." Karo v. San Diego Symphony Orchestra Assoc., 762 F.2d 819, 821-22 (9th Cir.1985). "Although the beneficiary need not be named in the contract, he must be a member of a class referred to and identified in it." Id. at 822. Here, the FTT/Victory contract says nothing about Esprit specifically nor anything about shippers like Esprit who would contract with FTT in the future. Rather, the contract refers specifically to FTT as the sole "Shipper." Therefore, Esprit cannot bring a breach of contract claim as a third-party beneficiary.
 
 
 14
 Esprit relies on Atchison Topeka & Sante Fe Ry. Co. v. United States, 94 F.Supp. 677 (Ct.Cl.1951), to argue that it can sue Victory as a third-party beneficiary. However, Atchison is not on point because Atchison was a common carrier case. Id. at 679.
 
 Agency
 
 15
 Esprit argues that it can sue Victory directly for breach of contract because FTT acted as its agent. Since Esprit raises this issue for the first time on appeal, we do not address it.
 
 CONCLUSION
 
 16
 We AFFIRM summary judgment in favor of Victory on the Carmack Amendment claim and third-party beneficiary theory, and REVERSE and REMAND on the negligence claim. The parties shall bear their own costs.
 
 
 
 *
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 11707 was recodified as § 14706, effective January 1, 1996. We will refer to the versions of the statute and the regulations in effect at the time Esprit's cargo was lost. See Appellee's Br. at Addendum
 
 
 [2]
 Esprit devotes the majority of its brief to the question whether a shipper may sue a common carrier under the Carmack Amendment when the shipper acts through an intermediary. However, Victory concedes that the Carmack Amendment permits a shipper to sue a common carrier even when the shipper acts through an intermediary
 
 
 [3]
 Victory devotes several pages in its brief to argue that Esprit could not bring a claim against Victory because Esprit was not a "shipper" in relation to Victory. It is not clear why this information is relevant to Esprit's Carmack Amendment claim, since the Carmack Amendment does not restrict recovery to "shippers."
 
 
 [4]
 To the extent that this clause may be construed as incorporating Carmack Amendment liability, it applies only to Victory and FTT as contracting parties, and not to Esprit unless Esprit can show that it was a third-party beneficiary to the FTT/Victory contract. See discussion infra pp. 8-9