Massimo MARTINO, S.A., Plaintiff,

v.

TRANSGROUP EXPRESS, and
Transcon International,
Inc. Defendants.

No. 01 Civ. 7917(RO).

United States District Court,
S.D. New York.

July 1, 2003.

William R. Fried, Robert J. Pachen, Wagner, Davis & Gold, P.C., New York City, for Plaintiff.

Wendy J. Musorofiti, Cichanowicz, Callan, Keane, Vengrow & Textor, LLP, New York City, for Transcon International Express.

Christopher Carlsen, Condon & Forsyth LLP, New York City, for Transgroup International, Inc.

### MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff Massimo Martino, a Swiss art dealer, loaned a number of Gerhard Richter paintings including "Seestruck Welle" to the David Zwirner Gallery in New York. In the spring of 2000, Hanna Schouwink of the Zwirner Gallery wrote two letters and made many calls to defendant Transcon to have "Seestruck Welle" shipped to the Museum of Modern Art of Fort Worth Texas. Schouwink had dealt with Transcon's office on numerous prior occasions. It was mentioned by her in the conversations and letters that the painting was very valuable (some $3,000,000) and must be handled carefully. She got a copy of the shipping

documents prior to the date of shipment but did not "recall reading it" when she received it. Schouwink depo. p. 47. She acknowledged she had gotten documents like that for prior shipments. She did not, however, at any time ask Transcon to provide, in effect, damage insurance and she testified in her deposition she was not aware that shippers offered such insurance. She did acknowledge in her deposition, "we have our insurance." Schouwink depo. p. 46. At Schouwink's instruction, a Transcon trucker picked up the painting not at the gallery but at independent SAT Warehouse, where an SAT employee signed the bill of lading which as signed, limited Transcon's liability to $0.60 per pound shipped. While the bill of lading had the usual provisions allowing the shipper at an increased cost to declare a higher value for the shipped item and obtain protection, thereby increasing Transcon's liability above $0.60 per pound, such options were not addressed by this employee at the warehouse.

After picking up the painting, Transcon contracted with defendant Transgroup to ship the painting to Texas. Transgroup issued Transcon a bill of lading that limited Transgroup's exposure to $0.50 per pound, unless a higher value was declared, which was not done.

En route to Texas, the painting was allegedly damaged, resulting in a $500,000 decrease in its value. Martino brought suit alleging negligence and breach of contract against the two carriers. Both defendants have moved for partial summary judgment limiting their liability, if any, to $0.60 per pound ($179.40) in Transcon's case, and $0.50 per pound ($149.50) in Transgroup's case, based on the painting's shipping weight of 299 pounds.

■ Both motions turn on whether the limited liability provisions in the bills of lading, signed in the first instance by the Zwirner Gallery's agent, are enforceable. Under the Carmack Amendment, 49 U.S.C. § 14706, carriers' limitations of liability are enforceable provided that they are set forth in a "reasonably communicative" form in the contract so as to result in a "fair, open, just and reasonable agreement" between the carrier and shipper, and where the contract offers the shipper a possibility of higher recovery by paying the carrier a higher rate. *Nippon Fire & Marine Insurance Co., Ltd. v. Skyway Freight Systems, Inc.,* 235 F.3d 53, 59–60 (2d Cir.2000). As was stated in *Hill Construction Corp. v. American Airlines, Inc.,* 996 F.2d 1315, 1317 (1st Cir.1993):

> Where air carriage contracts set forth limitations on carrier cargo liability in a "reasonably communicative" form and offer the shipper a choice of paying a higher rate for greater protection, federal courts have normally found those limitations lawful.

> \*     \*     \*     \*     \*     \*

> In a commercial context, liability limitations have certain advantages. They permit a carrier to avoid unforeseeably high liability for especially valuable cargo; they permit shippers of ordinary items to pay somewhat lower freight bills; and they permit shippers of valuable items to choose between paying an insurance premium to the carrier and obtaining, perhaps less expensive, insurance than their own. On the other hand, such clauses risk unfairness, where, for example, a shipper is, in fact, unaware of the limitation and his choices. Yet, the requirements of reasonably communicative notice and an opportunity to buy increased coverage for a premium payment lessen the risk of unfairness. And, as we have said, balancing advantages and disadvantages, both Congress and the courts have approved the use of such clauses.

The contract before us contains typical standard form clauses which reasonably communicate the limitation on liability. (citations omitted).

Further, in a fact situation closely paralleling that here, the *Hill Construction* Court at 1318 stated:

Ms. Hill testified that American's agent did not tell either her or her employee about the liability limitation clauses, and that, in fact, neither she, nor her employee, knew about such clauses. But, we do not believe that, in these factual circumstances, American was obliged to call the liability limitation to its customers' attention orally. The context is commercial. Hill Construction had been in business in Puerto Rico for eighteen years. Its employees had previously shipped helicopter parts from Puerto Rico to the mainland. In this context, a reasonably prominent writing, not in particularly small print, set forth with reasonable clarity on the front of a printed airbill, would seem sufficient to communicate the liability limitation, or at least to impose upon the commercial customer a further obligation to read (rather than to impose upon the carrier a further obligation to point to) what is written.

The *Hill Construction* Court's holding is, I observe, cited with approval by our Circuit in *Nippon Fire, supra.*

 Transcon, having set forth the limitation of liability in a reasonably prominent writing, is entitled to partial summary judgment limiting its liability to $.60 per pound or $179.40. Transgroup contracted only with Transcon and took the shipment forward by way of a bill of lading that limited its liability to $0.50 per pound. It is entitled to its liability being thereafter so limited on the reasoning above. Partial summary judgement is therefore also granted to Transgroup limiting its liability to $0.50 per pound, or $149.50.

So ordered.