## CASH AMERICA PAWN, L.P.

v.

## FEDERAL EXPRESS CORPORATION.

No. 4:98–CV–982–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

May 5, 2000.

Hal R. Ray, Jr., Gregory Wayne Higgins, Pope Hardwicke Christie Harrell, Schell & Kelly, Fort Worth, TX, for plaintiff.

Christopher L. Kurzner, Godwin White & Gruber, Dallas, TX, Stephen R. Cochell, Federal Express Corporation, Memphis, TN, for defendant.

## MEMORANDUM OPINION
## AND ORDER

MAHON, District Judge.

Now before the Court are cross motions for summary judgment filed by Defendant Federal Express Corporation and Plaintiff Cash America Pawn, L.P., respectively. In addition to its motion for summary judgment, Defendant Federal Express Corporation has filed a motion to dismiss Plaintiff's state law claims of conversion and negligence pursuant to Fed.R.Civ.P. 12(b)(6). The motions have been fully briefed. After reviewing the record in this matter, the submissions of the parties, and the applicable law, the Court determines that Defendant's motion for summary judgment should be granted and, moreover, that Defendant's motion to dismiss Plaintiff's remaining claims pursuant to Fed.R.Civ.P. 12(b)(6) should also be granted. Having determined that Defendant's motion for summary judgment and motion to dismiss claims should be granted, the Court need not address the arguments raised in Plaintiff's motion for summary judgment.

## I. BACKGROUND

Plaintiff Cash American Pawn, L.P. ("Cash America"), a limited partnership formed under the laws of Delaware and having its principal place of business in Texas, conducts business in Texas under its own name and under the assumed names "Cash America Trading Company" and "CATCO". As part of Cash America's business operations, and under the assumed name "CATCO," Cash America refurbishes jewelry and other items in Fort Worth, Texas and ships such items to locations throughout Texas and the United States.

Defendant Federal Express Corporation ("FedEx") is a corporation organized and existing under the laws of Delaware and is authorized to conduct business in Texas. Federal Express is a federally certificated all-cargo air carrier operating under authority granted to it by the Federal Aviation Administration.

Cash America has utilized the services of Federal Express to ship refurbished items of jewelry for a number of years. Cash America has maintained a Federal Express shipping account since April 1996. During the 12 months prior to the initiation of this lawsuit, Cash America shipped approximately 23,363 packages on their account.

During the course of 1996 to 1998, approximately, Cash America maintained a Federal Express Powership system on its business premises. A Powership is a computer, also referred to as a meter, which allows a shipper who maintains a minimum daily package volume to self-invoice and generate its own shipping labels. The shipping labels, which are identified by tracking numbers utilized by Federal Express, are created by entering certain information into the system. This information includes, among other things, a declared value for the package shipment, the Federal Express service desired (i.e., Priority Overnight, etc.), the number and weight of the packages, and the package recipient's name and address.

Beginning in or about October 1996 and continuing until approximately July 1998, Cash America shipped packages via Federal Express for delivery throughout the United States. Cash America alleges that during this period of time thirty-nine (39) of its packages shipped via Federal Express (hereinafter the "Lost Shipments") either completely failed to arrive at their intended destinations or arrived at their intended destinations but with a portion of the shipment contents missing, also known as "shortage". The bills of lading for these 39 Lost Shipments were prepared by Cash America through its Powership meter and the packages then allegedly tendered to Federal Express for pick-up and shipment. Although not delineated in its complaint, Cash America has identified these Lost Shipments at issue in this lawsuit by date and airbill number in a list provided to Federal Express as part of these proceedings.

Plaintiff claims that in some instances of "shortage" in the Lost Shipments, the packaging had been crudely resealed and delivered to intended destination. Plaintiff alleges that it properly and timely informed Defendant each time a package or items from a package failed to arrive at its destination. On many such occasions, Defendant conceded its liability and tendered a check in the amount of $100 per Lost Shipment to Cash America. Because of the frequency of "shortage" and missing packages among the Lost Shipments, Plaintiff alleges that it became concerned that Defendant and its employees were targeting packages sent by Cash America for the items of jewelry contained therein. Plaintiff voiced its concerns to Federal Express and Federal Express ultimately agreed to investigate the matter. Based upon information and belief, Plaintiff contends that Federal Express learned that its agents and/or employees were stealing Plaintiff's packages or items therefrom. Moreover, Plaintiff contends that Federal Express failed to take the action necessary to stop the theft of its shipments, despite

Federal Express' alleged knowledge of the conduct and theft of its employees. Therefore, Plaintiff brought this cause of action against Federal Express, asserting claims for breach of contract, conversion and negligence.[1] Plaintiff's complaint seeks relief in the amount of $170,000 in damages for the 39 Lost Shipments.

Although Plaintiff Cash America's cause of action alleges that Federal Express is liable for 39 Lost Shipments, Federal Express contends that its records demonstrate that Cash America only tendered 34 of the 39 Lost Shipments identified in this cause of action. Of the 34 Lost Shipments Federal Express claims Cash America tendered, Federal Express contends that Cash America only filed claims in connection with the non-delivery or "shortage" of 33 of the 34 Lost Shipments tendered to Federal Express. Thus, Federal Express claims it has no liability for the lone package tendered to Federal Express but for which Cash America did not filed a claim. As to the 33 claims filed by Cash America, it is undisputed that Federal Express processed these 33 claims and tendered checks in the amount of $100 per shipment, its contractual limit of liability under the Service Guide, to Cash America, in addition to refunding the shipping charges for these shipments to Cash America's account.

As to the five outstanding shipments among the 39 Lost Shipments, Federal Express asserts that three of the airbills identified among the 39 Lost Shipments were for packages containing claims checks shipped to Cash America by the Federal Express Claims Department. Further, Federal Express alleges that it has no record of the two remaining airbills identified on the Cash America list ever being tendered to Federal Express.

Defendant Federal Express seeks summary judgment and a finding that Federal Express' liability is limited in this case to $100 per shipment as per its contractual agreement.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir.1990). The evidence in the record is to be viewed in the light most favorable to the nonmoving party. *Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir.), *reh'g denied*, 918 F.2d 484 (1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989).

In order to prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988); *Thibodeaux v. Torch, Inc.*, 858 F.2d 1048, 1050 (5th Cir.1988); Fed. R.Civ.P. Rule 56(c). The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to his case. *Celotex, supra; Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir.1988). If the movant bears the burden of proof on a claim or

---

1. Plaintiff initiated this cause of action in state court in Tarrant County and Defendant removed the action to this court based on federal question jurisdiction in that Plaintiff's claims arise under and are governed by federal common law, *see Sam L. Majors v. ABX, Inc.*, 117 F.3d 922 (5th Cir.1997).

defense, he must establish all elements of the claim or defense to prevail on summary judgment. *Western Fire Ins. Co. v. Copeland,* 651 F.Supp. 1051, 1053 (S.D.Miss.1987), *aff'd,* 824 F.2d 970 (5th Cir.1987).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. In order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Federal Rules of Civil Procedure Rule 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Williams,* 836 F.2d at 961; Fed.R.Civ.P. Rule 56(c). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion and any doubt must be resolved in his favor. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Meyers v. M/V Eugenio,* 842 F.2d 815, 816 (5th Cir.1988). However, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### III. *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The Lost Shipments contained on the revised list were shipped on the Federal Express shipping account of CATCO, ___ number. During the course of this lawsuit, Cash America has amended the number of Lost Shipments for which Cash America alleges Federal Express is liable. Five of the airbill numbers[2] identified in the revised list are new airbill numbers that replace airbills originally misidentified by Plaintiff.[3] Federal Express' records show that Cash America failed to declare or pay for a value in connection with the five corrected airbill numbers.

With regard to three of the newly corrected airbill numbers, Federal Express' records show that claims were filed by Cash America and the claims were processed by Federal Express.[4] Checks in the amount of $100 per shipment, Federal Express' contractual limit of liability under the Service Guide, were tendered to Cash America. In addition, all shipping charges in relation to these three airbills/shipments were refunded to Cash America. Federal Express contends that it has no record of the checks being cashed. Furthermore, Federal Express contends that it has no record of receiving written notice of claim or documentation of loss of any of these claims prior to the initiation of this lawsuit.

With regard to the two remaining corrected airbill numbers[5], Federal Express' records show that trace requests from Cash America were received. However, Federal Express has no records of claims

---

**2.** Airbill 2250927183 dated 6/5/97; airbill 431467006102 dated 7/10/97; airbill 431467019801 dated 7/31/97; airbill 43146702269 dated 6/9/97; and airbill 431467214920 dated 6/17/98.

**3.** The numbers originally provided were either not shipments by Cash America or could not be verified. See July 28, 1999 affidavit of Steve Foster, ¶¶ 10–11.

**4.** Airbill 431467006102 dated 7/10/97; airbill 431467019801 dated 7/31/97; and airbill 431467022690 dated 6/9/97.

**5.** Airbill 2250927183 dated 6/5/97; and airbill 431467214920 dated 6/17/98.

being filed in relation to these two shipments.

With regard to the shipment traveling under airbill number 3871030721 and referred to by Cash America in Section II A(1) of Plaintiff's Opposition to Federal Express Motion for Summary Judgment, Federal Express' records show that a trace [6] request was received. However, Federal Express has no record of a claim being filed. No value was declared or paid for in connection with this shipment.

The revised list also contained three new airbill numbers [7] which had not been previously identified by Plaintiff Cash America. Federal Express' records show that Cash America did not declare, or pay for, a value for any of the three newly identified shipments. However, claims were filed and these claims were processed and checks in the amount of $100 per shipment, Federal Express' contractual limit of liability under the Service Guide, were tendered to Cash America. All shipping charges were refunded. To date, Federal Express has no record of the checks being cashed. Federal Express has no record of receiving written notice of claim or documentation of loss of any of these claims prior to the initiation of this lawsuit.

Furthermore, routine searches of the Federal Express Overgoods Department were conducted during 1996 to 1998 at or about the time of Plaintiff filing claims with Federal Express concerning the Lost Shipments. However, Federal Express was not able to locate any jewelry matching the descriptions provided by Cash America. In addition, Cash America conducted a search of Federal Express' Overgoods Department in Memphis on December 17, 1999 per the Court's November 19, 1999 Order, but Cash America was unable to identify any items of jewelry which could be identified as belonging to Cash America which were germane to this lawsuit and the Lost Shipments of 1996 through 1998. *See* Plaintiff's Inspection Report.

## A. *Analysis*

■ In its motion for summary judgment, Defendant Federal Express seeks summary judgment in its favor on Plaintiff's claim of breach of contract. Federal Express argues that there is no genuine issue of material fact regarding its liability to Cash America. Federal Express does not dispute that it is liable in the amount of $100 for any lost or missing shipment of Cash America for which Cash America has made a proper and timely claim. However, Defendant Federal Express fervently opposes Plaintiff's argument that Federal Express has waived the contractual limits of liability and is therefore liable to Cash America for the full value of the contents lost in the 39 Lost Shipments. Defendant Federal Express contends that the terms of the Federal Express Service Guide ("Service Guide") and Federal Express Master Powership Agreement ("Powership Agreement") limit Federal Express' liability for Plaintiff's injuries in this case to $100 per shipment, provided that Cash America made a proper and timely claim in regards to each shipment.

Plaintiff Cash America argues that Federal Express is liable for the full amount of Cash America's damages for the 39 Lost Shipments because Federal Express altered and/or waived the liability limitation in the Service Guide during its course of business with Cash America based on Federal Express' actions or inactions. Thus, the issue to be determined is whether Fed-

---

6. "Tracing" is Federal Express' internal procedure for attempting to locate a package based on the electronic scanning of the shipping labels at various stages of transportation. Customers frequently request tracing in order to locate packages. A request for a trace is not the same as a claim. Instead, it is noth-ing more than a request to locate a package or advise where the package is in the system.

7. Airbill 431467303134 dated 10/27/98; airbill 431467312183 dated 11/4/98; and airbill 431467290760 dated 10/14/98.

eral Express' $100 limitation of liability is valid.

The contracts of carriage for the Lost Shipments were embodied in a Powership Placement Agreement between Federal Express and Cash America and the June 1995 and July 1, 1997 editions of the Federal Express Service Guide incorporated therein by reference. The Service Guide and the Powership Agreement which were in effect at the time the subject transactions occurred provide the limits of liability for Federal Express on specific types of package shipments by Federal Express. The Service Guide expressly limits Federal Express' liability for lost or missing shipments, after the package has been tendered to Federal Express for shipping, "to the sum of $100 unless a higher value is declared on the airbill for the package at time of tender, and a greater charge [is] paid." *See* Service Guide, Defendant's Appendix p.15, at paragraph (B). In the case of packages containing "[j]ewelry, including, but not limited to, watches, gems, or stones (precious or semi-precious, cut or uncut); industrial diamonds and costume jewelry," the Service Guide limits Federal Express' maximum liability for lost or missing jewelry shipments to the declared value of the package up to but not exceeding $500. *Id.* at paragraph (F). However, if the shipper fails to declare a value for the package contents, the Service Guide limits Federal Express' liability to "the actual value [of the package's contents] or $100, whichever is less", even if the package contains multiple items of jewelry. *Id.* at paragraph (D).

Moreover, the Service Guide requires that a claim of loss be made in writing within 15 days after delivery to the recipient when the loss is due to shortage and within 180 days after acceptance of the cargo by Federal Express when the loss is due to non-delivery or misdelivery. Federal Express argues that certain of Plaintiff's claims for lost shipments are barred because Cash America failed to timely notify Federal Express of the claim. Fur-

thermore, the Service Guide provides that only the Senior Vice President of Marketing and Corporate Communications for Federal Express, and no other employee, is authorized to amend terms of the Service Guide. *See* Service Guide, Defendant's Appendix p.7. Moreover, this provision provides that any such amendment must be written and not oral. *Id.*

 Under federal common law, in the absence of evidence of unconscionability on the part of the carrier, a carrier may limit its liability for actual damages resulting from its negligence. *Husman Construction Co. v. Purolator Courier Corp.,* 832 F.2d 459, 461 (8th Cir.1987) (citation omitted), Thus, "[a] shipper who brings a negligence action may not recover in excess of the amount specified in the receipt or bill of lading." *Hopper Furs, Inc. v. Emery Air Freight Corp.,* 749 F.2d 1261, 1264 (8th Cir.1984). There are essentially two requisites of a valid, enforceable limitation on liability: (1) the limitation of liability must be the result of a fair, open, just and reasonable agreement between carrier and shipper entered into by the shipper for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of risk; and (2) the shipper must be given the option of higher recovery upon paying a higher rate. *United States Gold Corp. v. Federal Express Corp.,* 719 F.Supp. 1217, 1224 (S.D.N.Y.1989) (citations omitted). In evaluating whether those requirements are met, courts have considered such factors as: (1) whether the carrier has given adequate notice to the shipper of the limitation of the carrier's liability; (2) the economic stature and commercial sophistication of the parties; and (3) the availability of "spot" or one-time transactional insurance to cover a shipper's exposure to loss. *Id.* at 1225.

### B. *Plaintiff's Arguments*

Plaintiff Cash America argues that Defendant Federal Express has waived the liability provisions of the Service Guide.

Cash America contends that a waiver of the limits of liability occurred through Federal Express' course of dealing with Cash America in response to the missing Shipments. Cash America contends that Defendant Federal Express waived the limit of liability provision under the Service Guide based on Cash America's meeting with representatives of Federal Express and the subsequent course of dealing between the parties. Therefore, Cash America asks the Court to consider the express provisions of the Service Guide to have been voluntarily and intentionally waived by Federal Express' repeated requests for Cash America to work with Federal Express to prevent the future loss of Cash America packages and, in the event Cash America's packages were being targeted for theft by Federal Express employees, remedy any future theft of Cash America's packages.

In response, Defendant Federal Express asserts that no waiver of liability occurred in any meeting or course of dealing with representatives from Cash America. The Service Guide expressly sets forth that only the Senior Vice President of Marketing and Corporate Communications for Federal Express, and no other employee, is authorized to amend terms of the Service Guide, and that any such amendment must be in writing. See Service Guide, Defendant's Appendix p.7. Moreover, the Service Guide clearly provides that a modification of the contract, i.e. Service Guide, is ineffective unless in writing. *Id.* Not only must a modification of, if any, of the Service Guide be in writing, any oral representation of an employee at Federal Express cannot bind Federal Express.

### C. *Defendant's Liability*

As noted *supra*, there are essentially two requisites of a valid, enforceable limitation on liability. *See United States Gold Corp.*, 719 F.Supp. at 1224. The first req-

uisite is that the limitation of liability must be the result of a fair, open, just and reasonable agreement between carrier and shipper entered into by the shipper for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of risk. The second requisite is that the shipper must be given the option of higher recovery upon paying a higher rate.

In the instant case, Cash America entered into a Powership Agreement with Federal Express in order for Cash America to have a Powership meter on its premises. Cash America is a sophisticated shipper who during the twelve months prior to institution of this lawsuit shipped approximately 24,000 packages via Federal Express with many, if not all, the packages containing multiple items of jewelry. Cash America was doing such a high volume of shipping via Federal Express that Cash America obtained the Powership meter in order to expedite its shipping.

Cash America had the option of declaring an actual value on each shipment, which would result in a slightly higher shipping fee for the shipper. By declaring a value and paying the higher shipping fee, Cash America would have extended Federal Express' liability for each shipment to the declared value.[8] Although Cash America had the option to declare a value, pay a higher shipping fee and extend Federal Express' liability, the summary judgment evidence demonstrates that Cash America failed to declare a value on any of the Lost Shipments at issue in this action. Because Cash America failed to declare a value at the time of shipping on any of the Lost Shipments, Federal Express' liability was never extended beyond the $100 contractual limitation. Moreover, Cash America failed to declare on the package or to Federal Express that the contents of the packages contained jewelry, nor did Cash America obtain outside insurance to cover

---

**8.** However, in the case of packages containing jewelry, Federal Express' liability would still be limited to the declared value of the package contents, with a maximum liability upon Federal Express of $500.

any loss of the thousands of items of jewelry contained in the Lost Shipments.

In this breach of contract claim by Plaintiff, the Court must determine Defendant Federal Express' liability in accordance with the express terms of the contract of carriage, consisting of the Service Guide and the Powership Agreement, between the two parties. In the instant case, the Court determines that the Service Guide and Powership Agreement provided Cash America with adequate notice of the limitation of Federal Express' liability. Moreover, the Court determines, under all of the facts and circumstances of this case, that the limitations of liability expressly set forth in the Service Guide and Powership Agreement are controlling in this case.

Plaintiff has failed to submit to the Court any evidence of a written modification or amendment of the terms of the limitations contained in the Service Guide or specific bills of lading or contracts of carriage with CATCO. Accordingly, the Court finds that no modification of the terms of the Service Guide, or the limits of liability therein, occurred between Federal Express and Cash America, either explicitly or implicitly. There being no modification of the limits of liability contained in the Service Guide, Federal Express' liability to Cash America under the Service Guide is limited to the actual value of the contents of the tendered packages, but not to exceed $100 per tendered package for shipment. Because Federal Express is limited to a maximum liability of $100 per shipment and Federal Express does not dispute that the value of each of the Lost Shipments met or exceeded $100, the Court finds that Federal Express' liability to Cash America is $100 per shipment. *See infra,* section D.

Based on the foregoing, the Court finds that no genuine issue of material fact in this cause of action exists concerning Defendant's liability in excess of the contractual limit of liability of $100 per package. Accordingly, the Court will grant Defendant Federal Express' motion for summary judgment limiting Defendant's liability, if any, to $100 per tendered shipment.

## D. *Damages*

Having found that Federal Express' limit of liability per shipment is $100, the Court will now address the amount of damages owed by Federal Express for the Lost Shipments. The uncontroverted evidence shows that Cash America did not declare a value for any of the Lost Shipments, nor did Cash America pay a higher shipping fee. Thus, according to the Service Guide and Powership Agreement, Federal Express' liability for each of the 39 Lost Shipments was limited to the declared value for each shipment or, in the absence of a declared value, the sum of $100 per shipment. Cash America's cause of action alleges that 39 shipments containing jewelry which Cash America shipped through Federal Express were either (i) lost, never reaching their destination or (ii) delivered to their destination but had missing contents or missing portions of the shipment, i.e., "shortage." Defendant Federal Express seeks summary judgment as to all 39 Lost Shipments in the following manner: (a) summary judgment in regards to 33 shipments because Federal Express was contractually limited to $100 per shipment and Federal Express tendered this amount to Cash America plus refunding all shipping charges; (b) summary judgment in regards to two shipments because Federal Express has no record of having received those shipments or packages from Cash America for shipping; (c) summary judgment in regards to three shipments because they were not shipments sent by Cash America but were, instead, shipments containing claims checks sent by the Federal Express Claims Department to Cash America; and (d) summary judgment in regards to one shipment because Cash America failed to file a timely claim in connection with that shipment.

### 1. *33 Shipments based on limit of liability of $100 per shipment*

Federal Express contends that it is entitled to summary judgment in regards to 33 of the Shipments because Federal Express has already tendered to Cash America the contractual limit of $100 per shipment and refunded all shipping charges. Federal Express records indicate that Cash America filed claims in connection with the non-delivery or partial non-delivery of 33 of the Shipments Cash America tendered to Federal Express. After processing these 33 claims, Federal Express tendered to Cash America a check(s) in the amount of $100 per each of the 33 shipments and refunded all shipping charges. Based on the foregoing evidence, the Court determines that Federal Express is liable to Cash America in the contractual limit amount of $100 per shipment for each of the 33 shipments.[9]

### 2. *No Record of Receiving Tendered Packages from Plaintiff for Shipping*

■ Federal Express next seeks summary judgment as to two of the Shipments because Federal Express has no record of having received those shipments or packages from Cash America for shipping. Federal Express has no record of these two airbills identified by Cash America, nor can Cash America produce a copy of the bill of lading. The Court finds that, based on the record and in the absence of proper evidence to establish that these shipments were actually tendered to Federal Express, Defendant Federal Express is entitled to summary judgment as to these two enumerated Shipments and Plaintiff shall take nothing in relation to these two Shipments.

### 3. *Shipments from Federal Express to Cash America*

■ Federal Express contends that it is entitled to summary judgment in regards to three of the Shipments because the three shipments were not tendered by Cash America to Federal Express or even sent by Cash America but, instead, were shipments sent by the Federal Express Claims Department to Cash America. These three shipments originated from Federal Express and each contained claims checks from the Federal Express Claims Department for lost shipments of Cash America. Therefore, in regards to these three shipments, Federal Express was the actual shipper and would be the only party entitled to recover damages for a lost or missing shipment. Thus, the Court finds that Federal Express is not liable to Cash America in any amount for these three shipments.[10] Accordingly, Defendant Federal Express is entitled to summary judgment as to these three enumerated Shipments and Plaintiff shall take nothing in relation to these three Shipments.

**9.** Although the Court customarily does not address the issue of satisfaction of judgment, the Court notes that Federal Express' liability to Cash America is in the amount of $100 per shipment for the enumerated 33 shipments, or a total amount of $3,300. The record reveals that Federal Express has previously tendered checks to Cash America in the total amount of $3,300 in attempts to rectify its liability to Cash America, but that Cash America has not cashed the checks. The Court's judgment of $3,300 is a total judgment of liability for the 33 shipments as indicated above and is not meant to be construed as an award in addition to the $3,300 in checks already tendered by Federal Express to Cash America. The judgment of $3,300 is to be a full indemnity for the 33 missing shipments.

**10.** The Court's finding should not be construed to preclude Cash America from recovering from Federal Express the amount of the lost Federal Express Claims Department checks contained in these three shipments. Because Cash America has not sought the recovery of the amount of the lost claims checks in the instant cause of action but has only sought to hold Federal Express liable for the enumerated Shipments, the Court need not address the issue of the lost claims checks or Cash America's entitlement to having the checks re-issued in the event Federal Express did not re-issue these claims checks. However, as noted previously, the Court's judgment of $3,300 to Cash America is meant to fully indemnify Cash America for the lost shipments. *See* footnote 9.

#### 4. *Failure to Timely File Claim*

■ Federal Express seeks summary judgment as to one of the Shipments because Cash America failed to timely file a claim in connection with this shipment. Based on the record before the Court, there is no evidence that Cash America timely filed a claim in regards to this lost shipment. Accordingly, the Court determines that Defendant Federal Express is entitled to summary judgment as to this one Shipment and Plaintiff shall take nothing in relation to this one Shipment.

### IV. *DEFENDANT'S MOTION TO DISMISS REMAINING CLAIMS*

In addition to Plaintiff Cash America's claim for breach of contract, Plaintiff's Complaint also sets forth claims under state law for conversion and for negligence by Federal Express in connection with the Lost Shipments. In Defendant's motion to dismiss, Defendant Federal Express seeks for the Court to dismiss Cash America's conversion and negligence claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

■ Federal Express correctly argues that federal law governs this action. The Court of Appeals for the Fifth Circuit, as well as several other circuits, has held that the liability of federally certificated air carriers for loss of or damage to cargo is governed by federal common law. *See Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922 (5th Cir.1997); *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1250 (6th Cir.1996); *McCall–Thomas Eng'g Co. v. Federal Express Corp.,* 81 F.3d 28, 30 (4th Cir.1996); *Deiro v. American Airlines, Inc.,* 816 F.2d 1360 (9th Cir. 1987); *Husman Construction Co. v. Purolator Courier Corp.,* 832 F.2d 459 (8th Cir.1987); *Apartment Specialists, Inc. v. Purolator Courier Corp.,* 628 F.Supp. 55, 57 (D.D.C.1986), aff'd, 804 F.2d 153 (D.C.Cir.1986); *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229 (2d Cir.1978); *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.,* 731 F.2d 1113 (3d Cir.1984). Congress enacted a broad federal preemption statute, the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 1305(a)(1), which preempts all state law economic tort claims against airlines. The ADA provides in pertinent part: "[No] State . . . shall enact or enforce any law, rule, regulation, standard, other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . ." 49 U.S.C.App. § 1305(a)(1). Thus, Congress enacted the ADA in order to ensure that the states would not undo federal deregulation with state regulation. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Because Defendant Federal Express is a federally certified air carrier, Federal Express falls under federal preemption from state tort claims. *See Federal Express Corp. v. California Pub. Util. Comm'n,* 936 F.2d 1075, 1076, (9th Cir. 1991), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992).

#### A. *Plaintiff's Negligence Claim*

■ The Supreme Court has broadly construed the ADA's federal preemption from state law claims to preempt claims that have a connection with, or reference to an airline's prices, routes or services. However, the Supreme Court has introduced a narrow exception to the broad preemptive scope of the ADA by holding that certain breach of contract claims are not preempted. *See American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). The Supreme Court found that although such contract claims may relate to prices, routes, or services, the State is not enacting or enforcing a law. *See Travel All Over World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1431 (7th Cir.1996) (citing *Wolens,* 115 S.Ct. at 824). Therefore, in determining whether a breach of contract action survives ADA preemption, the Supreme Court held that a court is restricted to the actual

terms of a party's bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens,* 115 S.Ct. at 826.

In the instant case, Federal Express asserts that negligence claims, as applied to claims for loss of or damage to cargo, have been held to be preempted as such claims would impose requirements external to the agreement and have economic impact on rates. *See Trujillo v. American Airlines, Inc.,* 938 F.Supp. 392 (N.D.Tex. 1995). In *Trujillo v. American Airlines,* a case in which a shipper brought state law claims of negligence and gross negligence against an airline carrier for the loss of a shipment of jewelry, the court held that the state law claims were preempted because the claims related to the services provided by the airline:

> State causes of action are available to enforce bargains for services into which an airline voluntarily entered, *American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 824, 130 L.Ed.2d 715 (1995), but may not be used to impose external requirements upon airlines in the provision of services to the consumer, *Id.* At 826. Plaintiff's breach of contract claims was the means by which he could enforce the agreement for services he made with American. He may not cast his claims as ones for negligence or deceptive trade practices to extend his recovery beyond the terms of the contract. To do so would frustrate Congress' intent to deregulate the airline industry. Plaintiff's claims would affect American's provision of air shipment services "in their economic or contractual dimension" and are thus preempted. *Smith v. America West Airlines, Inc.,* 44 F.3d 344, 347 (5th Cir.1995) (en banc). "Claims founded upon the preparation of Waybills and shipping of packages would significantly affect the ability of airlines to limit their liability for providing those services. Preemption extends to all of the economic factors that go into the provision of the quid pro quo for passen-

ger's [sic] faire, including ... liability limits ..."

*Trujillo v. American Airlines, Inc.,* 938 F.Supp. 392 (N.D.Tex.1995) (citations omitted). Therefore, Federal Express argues, allowing Cash America to maintain tort actions in this action based on Federal Express' contractual obligations would be to enforce a state-created right as opposed to a privately-ordered agreement, which is in direct contravention of the Supreme Court's holding in *Wolens.*

The Court finds that Plaintiff's state law claim for negligence is preempted by the ADA because Plaintiff's claim relates to the services provided by the carrier. Moreover, the Court finds no rational argument to extend Cash America's recovery beyond the contractual limit of liability terms of which Cash America, a savvy and sophisticated business, was or should have been aware. Accordingly, Plaintiff's state law claim of negligence should be dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

### B. *Plaintiff's Conversion Claim*

▆▆▆ Federal Express argues that it cannot be held liable under federal law for the theft of its employees. Federal Express asserts that under federal law, the contractual provisions between the shipper and the carrier govern even where it is alleged that the acts of an employee of the carrier resulted in the conversion of the goods. *See Deiro,* 816 F.2d at 1366. "Under the federal common law, only an appropriation of property by the carrier for its own use will vitiate limits of liability." *Id.* "Where interstate carriage is concerned, only an appropriation of property by the carrier for its own use is sufficient to get around limits of liability. Willful misconduct is not enough." *Neal v. Republic Airlines,* 605 F.Supp. 1145, 1149 (N.D.Ill.1985).

Federal Express argues that even if, assuming *arguendo,* Cash America were correct in its allegation that the contents

of its Lost Shipments were stolen by Federal Express employees, Cash America is still limited to only a breach of contract action and cannot maintain a claim for conversion. In support of this argument, Federal Express cites to the holding in *Tishman & Lipp, Inc. v. Delta Airlines,* 275 F.Supp. 471 (S.D.N.Y.1967), *aff'd* 413 F.2d 1401 (2d Cir.1969), a case involving a similar factual pattern to the instant case. In *Tishman,* the plaintiff sought to avoid the defendant carrier's terms of limitation of liability in its contract by alleging that employees of the defendant carrier stole plaintiff's jewelry. The district court upheld the contract and its limitation of liability clause, stating that:

> Proof of delivery to the carrier and failure to return constitute a technical conversion. The evidence has established such a conversion. However, in order to relieve the defendant of its tariff protection, it is necessary for the plaintiff to prove more than mere technical conversion which has amounted perhaps to no more than negligence. Even gross negligence or proof that an employee of the defendant actually stole the jewelry would not suffice to render the tariff inapplicable.

*Tishman,* 275 F.Supp. at 480. In reaching this decision, the *Tishman* court relied upon the holding in *Glickfeld v. Howard Van Lines, Inc.,* 213 F.2d 723 (9th Cir. 1954), which stated in pertinent part:

> The litigants agree that if the property has been converted by the carrier, it would be against public policy to permit the carrier to limit its liability and thus to profit from its own misconduct. However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties or even by its own employees. In the latter circumstance, where the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct.

*Glickfeld,* 213 F.2d at 727.

Although the evidence establishes a technical conversion, Cash America has failed to demonstrate that Federal Express converted any of the contents of Cash America's Lost Shipments for Federal Express' own corporate use. In the absence of evidence of conversion for Federal Express' own use, Cash America cannot overcome the contractual limits on liability set forth in the contract of carriage, i.e., the Service Guide and Powership Agreement. Thus, Cash America cannot maintain a claim for conversion. Accordingly, Cash America's state law claim for conversion should be dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims of conversion and negligence should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Moreover, the Court finds that no genuine issue of material fact exists regarding Plaintiff's remaining breach of contract claim that Defendant Federal Express is liable for lost or missing Shipments in excess of the contractual limit of $100 per shipment.

Accordingly, it is hereby ORDERED that Defendant Federal Express Corporation's "Motion to Dismiss the First and Third Causes of Action of the First Amended Complaint" pursuant to Fed. R.Civ.P. 12(b)(6) is GRANTED. Plaintiff's claims for conversion and negligence are hereby DISMISSED for failure to state a claim upon which relief may be granted.

It is further ORDERED that Defendant Federal Express Corporation's Motion for Summary Judgment on Plaintiff's remaining claim of breach of contract is hereby GRANTED.

It is further ORDERED that Defendant Federal Express Corporation is liable to Plaintiff Cash America Pawn, L.P. for 33 of the Lost Shipments in the amount of $100 per shipment, the maximum contractual liability under the Service Guide. Accordingly, Plaintiff Cash America Pawn, L.P. shall take judgment in the amount of $3,300.00 against Defendant Federal Express Corporation.

All other relief not expressly granted herein is denied.